IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAVIER A. ROJO INZUNZA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.  CIV-12-197-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Javier A. Rojo Inzunza requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for benefits under the Social Security Act.  The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled.  For the reasons discussed below, the Commissioner's decision is REVERSED and the case REMANDED to for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is deemed to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 7, 1967, and was forty-three years old at the time of the administrative hearing (Tr. 28). He has a sixth grade education and past relevant work as a production helper, welder, rotor driller helper, sanitation truck driver, and sanitation collector (Tr. 32, 36-37). The claimant alleges that he has been unable to work since December 25, 2007 because of a broken ankle (Tr. 166).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 481-85, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 26, 2009. His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated September 20, 2010. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981; 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, 20 C.F.R. §§ 404.1567(a); 416.967(a), but could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl and never operate foot controls (Tr. 15). The ALJ concluded that although the claimant could not return to any of his past relevant work, he was nevertheless not disabled because there was other work he could perform, *i. e.*, final assembler (Tr. 19).

**Review**

The claimant's sole contention of error is that the ALJ failed to properly analyze opinion of his treating physician, Dr. Ricardo Valbuena, M.D. The Court finds that the ALJ did err analyzing Dr. Valbuena's opinion, and that the decision of the Commissioner should therefore be reversed.

On December 25, 2007, the claimant was injured at work when casing pipes fell on his leg (Tr. 297). On January 8, 2008, he underwent a revision of open reduction and internal fixation of the left medial malleolus fracture (Tr. 308). The claimant presented to Dr. Michael Kiehn in June 2008 for a worker's compensation evaluation on his left knee (Tr. 253). Dr. Kiehn noted that the claimant had tenderness to palpation in the front medial and lateral aspects of the knee and increased quadriceps girth grossly when comparing the left to the right (Tr. 253). Dr. Kiehn noted that a February 2008 MRI revealed that the claimant had a small lateral meniscal tear, some swelling in the knee, a

possible strain of the lateral collateral ligament, and mild degenerative changes in the lateral compartment and patellofemoral compartment (Tr. 252).  Dr. Kiehn recommended an aggressive quadriceps and hamstring strengthening program to work on weight bearing and get him off of his crutches (Tr. 252).  Dr. Kiehn wrote that the claimant could return to work with restrictions including no climbing, kneeling, crawling, bending, stooping, or squatting, and that the claimant would have to be able to change positions as needed and ice and elevate his knee every two hours (Tr. 252).  By July 22, 2008, Dr. Kiehn thought that the claimant could return to work activities as tolerated (Tr. 255).

On March 31, 2009, the claimant's physical therapist David Ball completed a Functional Capacity Evaluation in which he determined that the claimant could perform sedentary work (per the United States Department of Labor Work Classification Levels) because he could only occasionally tolerate standing and walking (Tr. 268).  Mr. Ball found that the claimant could occasionally, stand, walk, climb stairs, climb ladders, balance, and kneel (Tr. 269).  Upon examination, Mr. Ball found that the claimant had a marked left lower extremity antalgia and biased his weight bearing to the right leg (Tr. 271).  The claimant exhibited marked tenderness of the medial aspect of his left ankle, moderate tenderness of the lateral left ankle, and moderate tenderness of the left knee at the medial and lateral patella and medial and lateral joint lines (Tr. 271).  Finally, Mr. Ball noted that the claimant was positive for left knee patello-femoral crepitus and positive patella-femoral compression sign (Tr. 271).

State agency physician Dr. Ronald Schaztman, M.D. performed a consultative examination of the claimant.  He found atrophy of the claimant's left quadriceps and left lower extremities (Tr. 324), and noted that the claimant's effort was minimal due to pain with respect to testing the range of motion in his left ankle, and that he had weak heel and toe walking in his left leg (Tr. 324-25).  Dr. Schaztman also noted that the claimant walked with a severe limp (Tr. 325).

State agency physician Dr. Thurma Fiegel, M.D. completed a Physical Residual Functional Capacity Assessment.  She found that the claimant could lift and/or carry up to ten pounds occasionally, and less than ten pounds frequently; and stand and/or walk at least two hours, and sit for about six hours, in an eight-hour workday (Tr. 331).  She also found that the claimant could climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl only occasionally (Tr. 332).

On December 2, 2009, Dr. Valbuena submitted a letter indicating that he had been treating the claimant since July 20, 2009 for left ankle and left knee pain (Tr. 385).  He noted that the claimant continued to have "swelling and pain relieved by prescription pain medications" and diagnosed post-traumatic arthritis in the left ankle and a torn left lateral meniscus (Tr. 385).  Dr. Valbuena opined in the letter that the claimant was unable to work (Tr. 385).  On January 21, 2010, Dr. Valbuena completed a Physical Residual Functional Capacity Questionnaire (Tr. 402-06), in which he noted that the claimant's prognosis was fair, and that his symptoms consisted of constant pain and swelling of the left knee and ankle (Tr. 402).  Dr. Valbuena cited swelling, tenderness and the fact that

the claimant walked with a limp on his left leg as the bases for his opinion (Tr. 402).  He opined that pain and discomfort would constantly interfere with the claimant's attention and concentration, and that the claimant could sit or stand for only fifteen minutes at a time, and sit or stand for less than two hours in an eight hour workday (Tr. 404).  Dr. Valbuena also felt the claimant would need a job that would allow him to shift positions at will from sitting, standing, and walking, and he would need to take unscheduled fifteen-minute breaks every thirty minutes (Tr. 404).  Dr. Valbuena found that the claimant could occasionally lift and carry less than ten pounds, twist and stoop, rarely climb stairs, and never crouch, squat, or climb ladders (Tr. 405).  Dr. Valbuena also noted that the claimant would likely be absent from work more than four days per month (Tr. 405).

The claimant presented to Dr. A. J. Bisson, M.D. for a worker's comp evaluation on July 7, 2010.  Dr. Bisson reviewed the claimant's medical evidence and performed his own examination of claimant (Tr. 431).  The claimant had complaints of increased pain in his left lower extremity with weight bearing activities, and the claimant used a cane to walk (Tr. 431).  Dr. Bisson, too, noted that the claimant had muscle wasting in the left quadriceps and calf (Tr. 432).  With regard to work activities, Dr. Bisson thought that the claimant was at a level of temporary total disability, and noted that the claimant was unable to partake in work activities due to his pain symptoms (Tr. 433).

The claimant contends that the ALJ failed to properly analyze the opinion of his treating physician Dr. Valbuena.  Medical opinions from a treating physician such as Dr.

Valbuena are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  But even if such opinions are not entitled to controlling weight, an ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527; 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].  Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave

to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ rejected Dr. Valbuena's opinions as to the claimant's physical limitations in favor of other medical opinions in the record (Tr. 17), but wholly failed to analyze any of those opinions (treating physician or otherwise) under the proper standards. *See, e. g., Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. §[§] 404.1527(d), [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [emphasis added], *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). Nor did the ALJ explain why he found those other medical opinions (which came from physicians who did not treat the claimant) more persuasive. *See, e. g., Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1) & (2); 416.927(1) & (2); Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. And while the ALJ did note that Dr. Valbuena opined on an issue reserved to the Commissioner, *i. e.*, that the claimant was

totally disabled (Tr. 17), the ALJ was not allowed to wholly disregard even this opinion. *See* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *5 ("[O]pinions from any medical source on issues reserved to the Commissioner *must never be ignored*. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.") [emphasis added].

Because the ALJ failed to properly analyze the opinions of treating physician Dr. Valbuena (or any other physician opinion), the decision of the Commissioner must be reversed and the case remanded for further analysis.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform (if any), and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and that the decision of the Commissioner is therefore not supported by substantial evidence.  The decision of the Commissioner is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma